Samuel A. Diddle, ISB #4967
EBERLE, BERLIN, KADING, TURNBOW
   & McKLVEEN, CHTD.
1111 W. Jefferson St., Suite 530
P.O. Box 1368
Boise, ID  83701-1368
Telephone:  (208) 344-8535
Facsimile:  (208) 344-8542

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| BROOKS LECATES,<br><br>                    Plaintiff,<br><br>vs.<br><br>BLUE CROSS OF IDAHO, a corporation<br>licensed to do business in the state of Idaho,<br><br>                    Defendant. | Case No. 3:15-cv-00072-CWD<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

COMES NOW Defendant Blue Cross of Idaho ("Blue Cross") and submits this Memorandum in Support of its Motion for Summary Judgment.  Blue Cross submits that Plaintiff has failed to exhaust his administrative remedies and his claim fits within a specific exclusion in the group health plan.

## I.

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff is an eligible dependent of an enrollee in a group health plan sponsored by Gritman Medical Center ("Gritman").[1]  That group plan, entitled "ASC Preferred Blue Master

---

[1]  Blue Cross has submitted as Exhibit 1 to the Affidavit of Samuel A. Diddle the Administrative Record in this matter.  Documents are Bates stamped "GRITMAN000001 through GRITMAN000316" and are referenced in this Memorandum with the designation "AR" and the relevant page numbers.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – PAGE 1**

Group Plan," is found at AR 75 *et seq*. and was effective January 1, 2014 through December 31, 2014.  It is subject to ERISA, 29 U.S.C. §§ 1001, *et seq*.  *See* Complaint ¶ 3.

Benefits under the Plan are paid by Gritman.  The Plan provides for various benefits but also contains certain specified exclusions in the "Exclusions and Limitations Section."  AR 120.  Specifically, the Plan provides as follows:

> **A.     General Exclusions and Limitations**
>
> There are no benefits for services, supplies, drugs or other charges that are:
>
> … AL.  For the treatment of injuries sustained while committing a felony, voluntarily taking part in a riot, or while engaging in an illegal act or occupation, unless such injuries are the result of a medical condition or domestic violence.

AR 122.

Plaintiff, a 22-year-old male, was injured on April 12, 2014, when he "was riding his road bike approximately 70 miles per hour" and lost control and hit a fence.  AR 22.  He received serious injuries and required extensive medical treatment at St. Joseph Regional Medical Center in Lewiston, Idaho.  *Id.*  The treating physician's report indicates that Plaintiff "does drink quite heavily."  AR 24.  The laboratory tests taken at the time of Plaintiff's admission to the emergency room showed a blood alcohol serum level of .104.  AR 32.

Blue Cross, as Contract Administrator of the Plan, initially reviewed Plaintiff's claim for services and reviewed the related medical records and denied the claim for benefits based on the exclusion in the policy excluding benefits for injuries sustained while engaging in an illegal act.  AR 1.  The denial letter, dated September 2, 2014, stated:

> Mr. Lecates' policy does not require that he be cited or found guilty in a court of law, only that he be engaged in an illegal act.  Mr. Lecates' medical records provided by St. Joseph Regional Medical Center, included hospital admittance tests immediately

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – PAGE 2**

> following his single motorcycle crash.  These medical records included a blood alcohol serum level of .104, which support that he was over the legal limit for alcohol at the time of the accident.  It is illegal to drive while under the influence; therefore, he was engaged in an illegal act, under the terms of his policy.

*Id.*

Plaintiff's attorneys did not appeal this determination through the administrative process delineated in the Plan.  Rather, counsel filed a Complaint on March 5, 2015, seeking a judgment against Blue Cross for payment of benefits allegedly due, as well as other remedies and relief.  AR 151, *et seq*.  Gritman concurred with the Blue Cross denial of the claims based upon the illegal act exclusion on April 16, 2015.  AR 203.

## II.

## LEGAL ARGUMENT

### A.    Standard for Summary Judgment.

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence in a light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that there is no material factual dispute, and the court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  *Celotex*, 477 U.S. at 324.  Material facts that would preclude summary judgment are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The relevant substantive law will determine which facts are material for purposes of summary judgment.  *Id*.

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing there is no genuine issue of material fact by demonstrating an "absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  If the moving party establishes an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosp. Inc*., 929 F.2d 1404, 1409 (9th Cir. 1991).  A complete failure of proof concerning an essential element of the non- moving party's case renders all other facts immaterial.  *Celotex*, 477 U.S. at 323.

Where the moving party instead bears the burden of proof on an issue at trial, "it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue.  That is, the moving party must prevent evidence that, if uncontroverted at trial, would entitle it to prevail on that issue.  Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case." *Sabatino v. Liberty Life Assur. Co. of Boston*, 286 F.Supp.2d 1222, 1229 (N.D. Cal. 2003) (citing *UA Local 343 v. Nor-Cal Plumbing, Inc*., 48 F.3d 1465, 1471 (9th Cir. 1994)).

> **B.     The Claim Must Be Dismissed Because Plaintiff Failed to Exhaust Administrative Remedies.**

This action involves Plaintiff's claim for benefits under an employee welfare benefit plan, which is governed by ERISA, as amended, 29 U.S.C. §§ 1001, *et seq.  See* Complaint ¶ 3. The undisputed facts show that Blue Cross is entitled to dismissal of this action because Plaintiff

has failed to exhaust his administrative remedies as he is required to do before filing suit for benefits under ERISA.  See *Diaz v. United Agricultural Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th. Cir. 1985).

Plaintiff submitted claims to Blue Cross for services rendered by St. Joseph Regional Medical Center seeking benefits under the Plan.  Blue Cross initially denied those claims.  The denial was stated in an Explanation of Benefits Statement ("EOB") sent to Plaintiff, as well as a letter from Blue Cross to Plaintiff dated April 16, 2014.  AR 172.

The Plan provides the following appeal procedure with respect to an adverse benefit determination:

> C.   A Participant who wishes to formally appeal a Post-Service Claims decision by Blue Cross on behalf of the Plan Administrator, may do so through the following process:
>
> 1.   A written appeal must be sent to the Appeals and Grievance Coordinator within one hundred eighty (180) days after receipt of the notice of Adverse Benefit Determination.  This written appeal should set forth the reasons why the Participant contends Blue Cross's decision was incorrect.  Any written comments, documents or other relevant information may be submitted with the appeal.
>
> 2.   After receipt of the written appeal, all facts, including those originally used in making the initial decision and any additional information that is sent or that is otherwise relevant, will be reviewed by a Blue Cross Medical Director, or physician designee if the appeal requires medical judgment.  Blue Cross shall mail a written reply to the Participant within thirty (30) days after receipt of the written appeal.  If the original decision is upheld, the reply will list the specific reasons for denial and the specific provisions on which the decision is based.  Each appeal will be processed as quickly as possible.

3.      Furthermore, the Participant or their authorized representative has the right to reasonable access to, and copies of all documents, records, and other information that are relevant to the appeal.

4.      If the original decision is upheld upon reconsideration, the Participant may send an additional written appeal to the Appeals and Grievance Coordinator requesting further review. This appeal must set forth the reasons for requesting additional reconsideration and must be sent within sixty (60) days of Blue Cross' mailing of the initial reconsideration decision. …

AR 133.

Plaintiff's attorney timely pursued the first level of appeal by sending to Blue Cross the required written Appointment of Authorized Representative form on July 31, 2014, and a letter from counsel dated July 17.  AR 10 and 14.  Blue Cross responded by letter of September 2, 2014, which stated:

After the claims are adjusted, Mr. LeCates will receive a new Explanation of Benefits (EOB).  New appeal rights will become available.  If Mr. LeCates disagrees with this determination, as his authorized representative, you may submit a second appeal requesting further review.  In addition, Mr. LeCates or you may request copies of all documents related to the denial of this claim (including the actual benefit provision, guideline, protocol or similar criterion upon which the decision was based) at no charge. Please send your written appeal within 180 days from the date of the new EOB to the following address:

Grievance and Appeals Specialist
Blue Cross of Idaho
P.O. Box 7408
Boise, ID  83707

AR 4.

The EOB dated September 8, 2014, contained the following paragraph:

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – PAGE 6**

**APPEAL PROCEDURES**

You have the right to appeal a claim decision involving the denial, reduction, termination of, or failure to provide or make payment in whole or in part for a benefit.

If you would like to appeal a claim decision, please follow these steps: Write a letter stating the reasons you believe our claim decision was incorrect. Include comments, documents, medical records or other relevant information with your letter. If the Explanation of Benefits for the claim you are appealing indicates we made our decision based on medical necessity or investigational treatment exclusions, or relied on an internal guideline or similar criteria in making our decision, you may obtain a copy of that information free of charge. If the Explanation of Benefits for the claim you are appealing states we made our determination based on medical necessity or investigational treatment exclusions, you may also obtain a copy of the documents we used to make our decision. Send your letter and all documentation to the Appeals and Grievance Coordinator no later than 180 days after you received this Explanation of Benefits, using the address on page one of this form. We will mail you a decision within 30 days from the day we receive your appeal. You or your authorized representative may request copies of all documents related to this appeal at no charge. If we uphold our initial claim decision on appeal, you may have the right to file a second appeal. An external review process may be available to you following completion of the internal review process. Under section 502(a) of the Employment Retirement Income Security Act, you may also have the right to file a civil action following the exhaustion of the complete appeals process. Please refer to your policy or employee benefits document for the complete description of appeal processes available to you.

AR 289. Plaintiff did not exhaust appeal rights for his claims.

Blue Cross is entitled to dismissal of all claims because the undisputed facts show that Plaintiff has not exhausted the available administrative remedies, as he is required to do. "Quite early in ERISA's history, [the Ninth Circuit] announced as the general rule governing ERISA claims that a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Diaz,* supra at 1483 (citing *Amato v. Bernard*, 618 F.2d

559, 566-68 (9th Cir. 1980)).   Although this obligation is not expressly set out in ERISA, the

seminal case on the exhaustion doctrine, *Amato v. Bernard*, holds:

> [T]he exhaustion doctrine is consistent with ERISA's background, structure and legislative history and serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise.
>
> . . .
>
> Consequently, the federal courts have the authority to enforce the exhaustion doctrine in suits under ERISA, and [ ] as a matter of sound policy they should usually do so.

*Amato*, 618 F.2d at 566-68.   In *Diaz*, the Ninth Circuit applied *Amato* and the exhaustion

doctrine to conclude that dismissal of the action in its entirety was appropriate in that case.   *Id.* at

1486.

Section 502 of ERISA, 29 U.S.C. § 1132, allows an ERISA plan participant or

beneficiary to bring an action "to recover benefits due to him under the terms of his plan, to

enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

terms of the plan[.]"   29 U.S.C. § 1132(a)(1)(B).   The Ninth Circuit has recognized a "prudential

exhaustion requirement" for § 1132 claims: that is, the Ninth Circuit has held that "before

bringing suit under § 502, an ERISA plaintiff claiming a denial of benefits 'must avail himself or

herself of a plan's own internal review procedures before bringing suit in federal court.'"   *Vaught*

*v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626-27 & n. 2 (9th Cir. 2008)

(quoting *Diaz*).   The requirement to exhaust remedies is not an empty formality, particularly in

this claim.   Plaintiff had the right to submit additional information for consideration.

Plaintiff submitted a timely first level appeal but failed to pursue the second level of appeal. Plaintiff's deadline to appeal was 180 days from the date of the new EOB sent to Plaintiff, September 8, 2014. The deadline for submitting appeals has now passed. Plaintiff has failed to exhaust his administrative remedies and the deadline for initiating appeals has passed on all claims, so dismissal must be with prejudice.

### C. The Plan's Determination of the Claim for Benefits Was Correct.

#### 1. ERISA Standard of Review

ERISA requires that a plan fiduciary administer an ERISA plan for the purpose of "providing benefits to participants and their beneficiaries" and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(A)(i), (a)(1)(D); *see also id.* § 1002(8) (defining a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan"). In actions challenging denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), the district court reviews *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan unambiguously confers discretionary authority, the standard of review shifts to abuse of discretion. *Id.*; *see also Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999).

The first step of analysis is to examine whether the terms of the ERISA plan here unambiguously granted discretion to the Claim Administrator and Plan Administrator. Blue Cross is the third party Claim Administrator of the Plan and Gritman is the Plan Administrator. Each is granted authority to determine benefits and interpret the Plan.

> **Plan Administrator**—The Plan Administrator, Gritman Medical Center, who is the sole fiduciary of the Plan, has all discretionary

> authority to interpret the provisions and control the operation and administration of the Plan within the limits of the law. . . . All decisions made by the Plan Administrator, including final determination of Medical Necessity, shall be final and binding on all parties. Gritman Medical Center also reserves the right to modify eligibility clauses for new Plan participants who join the Plan as a result of a merger, acquisition or for any employee who was covered under a labor agreement plan during a previous period of employment to which Gritman Medical Center, contributes, provided that coverage under this Plan begins within 31 days of the date coverage under the previous Plan terminates. Gritman Medical Center may choose to hire a consultant and/or Contract Administrator to perform specified duties in relation to the Plan. The Plan Administrator also has the right to amend, modify or terminate the Plan at any time or in any manner as outlined in the administrative services agreement.

AR 115.

The Plan states on page 62 in Section XXI:

> BCI is vested with authority and discretion to determine eligibility for coverage and whether a claim for benefits is covered under the terms of this Plan, based upon all the terms and provisions set forth in this Plan, and also to determine the amount of benefits owed on claims which are covered.

AR 280.

The Ninth Circuit has repeatedly held that plan wording that, like the language at issue, grants the power to interpret plan terms and to make final benefits determinations confers discretion on the plan administrator. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (citing *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1142 (9th Cir. 2002); *Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1159 (9th Cir. 2001)). The Plan bestows on the Plan Administrator full discretion and authority to both interpret all terms and provisions of the Plan and determine eligibility for benefits.

After finding a plan unambiguously confers discretion, the court proceeds to review the plan administrator's decision under the deferential abuse of discretion standard of review. An

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – PAGE 10**

ERISA administrator abuses its discretion if it:   "(1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact."   *Boyd v. Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005).

In general, a plan administrator's decision may be challenged by seeking judicial review only of the record developed during the administration of the claim.   *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1091 (9th Cir. 1999).   This Court has previously determined that, regardless of the appropriate standard of review, a court "may not take additional evidence merely because someone at a later time comes up with evidence that was not presented to the plan administrator."   *Podolan v. Aetna Life Ins. Co.*, 909 F.Supp. 1378, 1385, 1386 (D. Idaho 1995) (citing *Mongeluzo v. Baxter Long Term Disability Plan*, 46 F.3d 938, 940 (9th Cir. 1995)).

When considering questions of insurance policy interpretation under ERISA, federal courts apply federal common law.   *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir. 2002).   Under the federal common law of ERISA, the courts "interpret terms in ERISA insurance policies in an ordinary and popular sense, as would a person of average intelligence and experience."   *Id.*   The interpretation of an insurance policy is a question of law, and any ambiguities in the plan are construed against the insurer.   *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990); *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990).

Under an "abuse of discretion" standard of review, the decision to deny Plaintiff's claim can be overturned only if the Court determines the decision was illogical, implausible, or without support in inferences that may reasonably be drawn from the facts in the record.   *Salmaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 676 (9th Cir. 2011) (citing *United States v. Hinkson,* 585 F.3d 1247 (9th Cir. 2009) (*en banc*)).   This standard requires that the Court uphold the administrator's decision "if it is based upon a reasonable interpretation of the plan's terms and

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – PAGE 11**

was made in good faith." *Estate of Shockley v. Alyeska Pipeline Ser. Co.*, 130 F.3d 403, 405 (9th Cir. 1997). Both of these conditions are met here. Gritman and Blue Cross's determination did not misinterpret the terms of the Policy, afforded Plaintiff a full and fair review of his claim as required by ERISA, and had an abundance of evidence supporting its determination. *Bartholomew v. Unum Life Ins. Co. of Am.*, 588 F.Supp.2d 1262, 1273 (W.D. Wash. 2008).[2]

### 2.    The Illegal Act Exclusion Applies.

Plaintiff's injuries occurred, according to the medical records, when he was riding his road bike approximately 70 m.p.h. and loss control. AR 22. When he was brought into the emergency room in Lewiston, his blood alcohol serum level was .104. The legal limit to establish driving while intoxicated in Idaho is .08. Idaho Code § 18-8004 provides:

> Persons under the influence of alcohol, drugs or any other intoxicating substances
>
> (1)    It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or any combination of alcohol, drugs and/or any other intoxicating substances or who has an alcohol concentration of 0.08, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge or upon public or private property open to the public.

Benefits were properly denied based on the illegal act exclusion. First of all, any claim that the exclusion for an illegal act should not apply because Plaintiff was not convicted of driving under the influence is specious. The exclusion does not require "conviction" for engaging in an illegal act. *SGI/Argis Employee Benefits Trust Plan v. Canada Life Assurance Co.,* 151 F.Supp.2d 1054 (E.D Ark. 2001), deals with this identical issue. The plan participant in

---

[2]  In *Bartholomew,* the court noted that when the decision to grant or deny ERISA benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question of whether discretion has been abused before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply. *Id.* at 1266 (citing *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 942 (9th Cir. 1999)).

that case was not convicted but the court upheld the exclusion which excluded treatment of services resulting from or occurring while "engaged in an illegal act …."  The court stated:

> The fact that Mr. Slovacek, or any other person, is not caught or prosecuted for his illegal actions does not make the action legal. "The failure of the state criminal justice system to prosecute an individual for alleged felonious activity by no means constitutes an affirmative finding of that the individual is absolved of any crime." *James v. Louisiana Laborers Health & Welfare Fund*, 29 F.3d 1029, 1034 (5th Cir. 1994).  As the *James* court observes, "[I]t would be an illogical in the instance where the covered person under the policy was killed during the commission of a crime to require that the state prosecute the individual before he could be considered to have committed the crime." ….
>
> Moreover, the court finds that exclusion 14 is unambiguous.  It is unreasonable to read the term "illegal act" as requiring judicial action and conviction.  Driving while "intoxicated" as that term is defined by Texas law, is illegal whether a person is convicted of the crime or not.  The drafters of this exclusion could have required a conviction for Exclusion 14 to apply by including such language in the plan.  The natural meaning of the term does not include such a requirement. …

151 F.Supp.2d at 1047-48.

In *Sister of the Third Order of St. Francis v. Swedish American Group Health Benefit Trust*, 901 F.2d 1369 (7th Cir. 1990), the court also upheld a denial under the illegal act exclusion.  It found that driving with more than the legal limit of blood alcohol was an illegal activity within the policy, noting that the State of Illinois made drunk driving a misdemeanor. The exclusion in that case excluded coverage for expenses while engaged in any illegal or criminal activity, just as the exclusion in the current Plan excludes treatment sustained while engaging in an illegal act.

In *Tourdot v. Rockford Health Plans, Inc.*, 357 F.Supp.2d 1100 (W.D. Wis. 2005), the court considered a similar situation and stated:  "Plaintiff argues that the exclusion is ambiguous because it does not say whether an illegal act requires a conviction, but this argument cannot

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – PAGE 13**

succeed.  Illegal acts are illegal acts, whether or not they result in convictions.  As Judge Reynolds explained in length in [*Lampen v. Albert Trostel & Sons Co. Employee Welfare Plan*, (E.D. Wis. 1993)], there may be many reasons why a criminal act does not result in a conviction.  The critical question is whether the act is one that is classified as criminal, not whether it is one that was charged and resolved with a conviction."  *Id.* at 1105-06.  In *Carter v. ENSCO, Inc.*, 438 F.Supp.2d 669, 675 (D.C. W.D. La. 2006), the district court held that "the fact that Carter was not prosecuted for operating a vehicle while intoxicated does not preclude an administrative finding that he was indeed engaged in an illegal act as that term is defined by the plan."

In the present case, the evidence is clear that Plaintiff was driving under the influence of alcohol when he ran off the road and hit a fence.  The decision to apply the illegal act exclusion is simply not an abuse of discretion but is correct even under *de novo* review.

### III.

### CONCLUSION

Plaintiff's Complaint should be dismissed because he has failed to exhaust his administrative remedies under ERISA.  The determination that Plaintiff was engaged in an illegal act when his accident occurred is a reasonable conclusion and should be upheld.  Accordingly, Blue Cross respectfully requests the Court to dismiss Plaintiff's complaint with prejudice.

DATED this 29th day of January, 2016.

EBERLE, BERLIN, KADING, TURNBOW
& McKLVEEN, CHARTERED


By     /s/ Samuel A. Diddle
    Samuel A. Diddle, of the firm
    Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of January, 2016, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Paul Thomas Clark
Attorney for Plaintiff
tclark@clarkandfeeney.com


                                    /s/ Samuel A. Diddle
                                  Samuel A. Diddle


**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – PAGE 15**